# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIMINAL ACTION NO. 4:18-** |
| | §**CR-0626** | |
| | § | |
| **JCOLBY OGLESBY** | | |

## MEMORANDUM & ORDER

Pending before the Court is Defendant Jcolby Oglesby's Motion to Suppress. (Doc. No. 21.)

## I.      BACKGROUND

Mr. Oglesby has been federally charged as a felon in possession of a firearm. Evidence of the alleged crime was discovered by the Government upon Mr. Oglesby's arrest by Houston police for burglary of a vehicle and evading arrest. (Doc. No. 21.) The arrest occurred during an investigation of a string of "jugging"[1] incidents at a shooting range. (Doc. No. 23 at 2.)

Here, the Government alleges that police received several complaints that a black Jeep Liberty with paper license plates stole firearms from patrons exiting a shooting range. (Doc. No. 23 at 2.) Police were surveilling the shooting range when a Jeep matching this description entered the parking lot. (Doc. No. 23 at 2.) Police observed a patron exit the shooting range and place a bag in the back seat of his pickup truck. (Doc. No. 21-2 at 2.) Officers saw the Jeep

---

[1] The Government uses the term "jugging" to describe a type of theft in which the perpetrator sees the potential victim with property of value and follows the victim until an opportunity arises to steal the property. (Doc. No. 21-2 at 2.)

follow the pickup as it left the shooting range and proceeded to a nearby restaurant. (Doc. No. 23 at 2.) Once the driver of the pickup entered the restaurant, police observed a man, whom they later identified as Mr. Oglesby, exit the Jeep, break the pickup's rear passenger window, remove items from the backseat, and place them in the Jeep. (Doc. No. 23 at 2.)

Police allege that they attempted to approach Mr. Oglesby, who got back into the Jeep and drove away. (Doc. No. 23 at 3.) Police pursued the Jeep, and Mr. Oglesby was arrested. (Doc. No. 23 at 3.) The Government claims another individual was arrested with Mr. Oglesby and was inside the Jeep as these events transpired.[2] (Doc. No. 23 at 3.)

After Mr. Oglesby was arrested, police found a cell phone on the Jeep's front seat. (Doc. No. 21-2.) The police sought and received a search warrant for the phone. (Doc. No. 21-2 at 1.) The search revealed incriminating photographs and videos. (Doc. No. 21-2 at 8.) Specifically, Mr. Oglesby has previously been convicted of felonies, and the phone contained pictures of him with firearms. (Doc. No. 21-2 at 8.) Police also extracted GPS data indicating that Mr. Oglesby was making purchases from a local gun store. (Doc. No. 21-2 at 8.) Further investigation at the gun store uncovered evidence that Mr. Oglesby was setting up "straw purchases," during which friends would buy guns on his behalf. (Doc. No. 21-2 at 8-10.) Police suggest that Mr. Oglesby was acquiring the guns to sell on the black market. (Doc. No. 21-2 at 10.) Mr. Oglesby was indicted on two counts of felon in possession of a firearm on October 18, 2018.

---

[2] It does not appear that the magistrate judge knew this detail when signing the warrant. Affiant's declaration states that the facts he swears to were taken from another officer's report, Houston Police Department report #390924-18. (Doc. No. 21-2 at 2.) The Government alleges that this report states that a man named Bobby Taylor was in the passenger seat of the Jeep and was arrested along with Mr. Oglesby. (Doc. No. 23 at 3.) There is no indication that the report was read by the magistrate judge. At the suppression hearing, Affiant testified that the magistrate judge did not ask additional questions about the content of that report.

Mr. Oglesby now moves to suppress the evidence obtained from the search of his cell phone, and "all evidence derived as the fruit of the cell phone search, including any firearms or ammunition, statements, and any additional, subsequent evidence obtained from the firearm investigation." (Doc. No. 21 at 2.) Mr. Oglesby bases his motion on two alleged deficiencies in the warrant: (1) the warrant did not establish probable cause to believe that evidence of the offense being investigated at the time of the warrant application—burglary of a vehicle—would be found on the phone; and (2) the warrant was facially overbroad in violation of the Fourth Amendment's particularity requirement. (Doc. No. 21 at 1.) It is undisputed that the warrant specified the cell phone itself with particularity (by including identifying features like cracks and an identification number). Mr. Oglesby argues instead that the warrant was overbroad in its description of which categories of data on the cell phone could be searched, as it allowed the police to search the entire contents of the phone, without limitations. (Doc. No. 21 at 1.)

## II.    APPLICABLE LAW

The Fourth Amendment mandates that search warrants issue only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Search warrants must be supported by a sworn affidavit establishing probable cause. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). Exceptions to the warrant requirement exist, but the Supreme Court has ruled that police are required to obtain a warrant before searching a cell phone seized incident to an individual's arrest. *Riley v. California*, 573 U.S. 373, 403 (2014).

Ordinarily, the exclusionary rule mandates that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974); *see also Mapp v.*

*Ohio*, 367 U.S. 643 (1961). Searches conducted pursuant to warrants that are later held invalid often fall under the good-faith exception to the exclusionary rule, which provides that "evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003); *see also United States v. Leon*, 468 U.S. 897 (1984).  An officer's reliance on the warrant is not objectively reasonable and in good faith if "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Payne*, 341 F.3d at 400 (quoting *Leon*, 468 U.S. at 922 n.23).

The good-faith exception does not apply in any of the following circumstances:

> (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992). Only the final two circumstances are at issue here.

The quintessential example of an affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" is a "bare bones" affidavit lacking "sufficient information to determine that probable cause exists." *United States v. Brown*, 941 F.2d 1300, 1303 (5th Cir. 1991); *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

A "bare bones" affidavit "contain[s] wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). Examples include affidavits that "merely state that the affiant 'has cause to suspect and does believe,' or 'has received reliable information from a credible person and does believe,' that contraband is located on the premises." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (quoting *Brown*, 941 F.2d at 1303 n.1).

A. <u>Probable Cause</u>

A magistrate judge's decision that a search warrant was supported by probable cause "is entitled to great deference by reviewing courts." *Brown,* 941 F.2d at 1302. The finding of probable cause need only be supported by "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* Review of probable cause determinations must focus solely on the information presented to the magistrate judge who issued the warrant. *United States v. Jacobsen*, 466 U.S. 109, 112 n.2 (1984); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention."), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983); *see also Messerschmidt v. Millender*, 565 U.S. 535, 568 n.8 (2012) (Sotomayor, J., dissenting) (quoting *Aguilar*); *Illinois v. Gates*, 462 U.S. 213, 293 n.6 (1983) (Stevens, J., dissenting) ("It is a truism that 'a search warrant is valid only if probable cause has been shown to the magistrate and that an inadequate showing may not be rescued by post-search testimony on information known to the searching officers at the time of the search.'" (collecting cases)); *Spinelli v. United States¸* 393 U.S. 410, 413 n.3 (1969) (quoting *Aguilar*), *abrogated on other grounds by Gates*, 462 U.S at 213.

Probable cause determinations are "practical, common sense decision[s] as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002). "Facts in the affidavit must establish a nexus between the [thing] searched and the evidence sought." *Payne*, 341 F.3d at 400. The nexus may be established "through normal inferences as to where the articles sought would be located." *United States v. Freeman¸* 685 F.2d 942, 949 (5th Cir. 1982).

### B. Particularity

The Fourth Amendment requires search warrants to demonstrate particularity in (1) the description of the place or item to be searched, and (2) the identification of the persons or things to be seized. U.S. Const. amend. IV. The particularity requirement prevents the authorization of "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

A search warrant "satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *United States v. Castro*, 881 F.3d 961, 964 (6th Cir. 2018) (citing *Andresen v. Maryland*, 427 U.S. 463, 480-81 (1976)).

> [T]he scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."

*Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). In this way, like the probable cause requirement, the particularity requirement mandates that a nexus be established between the specific thing to be searched and the evidence for which law enforcement is looking.

Items seized pursuant to a search warrant "must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized." *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986). "However, in circumstances where detailed particularity is impossible, generic language suffices if it particularizes the types of items to be seized." *Id.* (internal quotation marks omitted). Although the Fifth Circuit has upheld warrants authorizing the seizure of "all records" in "extreme cases," such broad language triggers "much closer scrutiny" under the Fourth Amendment. *United States v. Humphrey*, 104 F.3d 65, 69 & n.2 (5th Cir. 1997).

## III.    PROBABLE CAUSE

### A.  Whether the Magistrate Relied on a "Bare Bones" Affidavit

Here, Mr. Oglesby alleges that the affidavit supporting the warrant "did not establish probable cause to search the phone because it failed to provide any facts connecting the phone to the vehicle-burglary offense being investigated." (Doc. No. 21 at 5.) Mr. Oglesby argues that the vague generalizations about the various ways individuals use phones while committing crimes are insufficient. (Doc. No. 21 at 5-6.) The Government explains that the cell phone was related specifically to the crime because there was another person in the car, with whom Mr. Oglesby allegedly conspired, and the investigation was into a series of vehicle burglaries, not one discrete occurrence. (Doc. No. 23 at 2-3.) The Government argues these facts imply coordination and communication, evidence of which one might expect to discover on a cell phone.

The statements about the phone that appear in the affidavit include the following:

- A reference to Houston Police Department report #390924-18, which states that another individual was arrested with Mr. Oglesby during the incident and was a passenger in his car. (Doc. No. 21-2 at 2.) The report was not included in the exhibits, and there is no indication that the magistrate judge read this report or inquired into its contents.

- Affiant believes the phone contains "evidence of the offense of the aforementioned offenses [sic], and/or evidence that a particular person committed the offense described herein, and/or items and information that is an implement or instrument used in the commission of the crime described herein, that may be found therein, including, but not limited to: [list of data that may be stored on a phone]." (Doc. No. 21-2 at 4.)

- Based on his training and experience, Affiant knows that smart phones can send, receive, and store large quantities of data. (Doc. No. 21-2 at 4.)

- Based on his training and experience, Affiant knows that cell phones are often used "to communicate in a variety of ways." (Doc. No. 21-2 at 4.)

- Affiant believes "the incoming and outgoing telephone calls, incoming and outgoing text messages, e-mails, video recordings and subsequent voicemail messages could contain evidence related to this offense and this investigation." (Doc. No. 21-2 at 4.)

- Based on his training and experience, Affiant knows it is "common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications." (Doc. No. 21-2 at 4.)

- Affiant knows from training and experience that "someone who commits the type of offense being investigated often make [sic] phone calls and/or text messages about the crime and/or their plans." (Doc. No. 21-2 at 4.)

- Affiant knows based on training and experience that "suspects often utilize a cellular telephone to communicate with other individuals with knowledge of the crime." (Doc. No. 21-2 at 4.)

- Affiant knows based on training and experience that "suspects often access the internet via their cellular telephone to search for information about crimes." (Doc. No. 21-2 at 4.)

Despite the Government's arguments, the affidavit contains neither statements directly referencing another individual's involvement in the incident, nor statements about the string of burglaries being investigated. Without evidence that these facts were presented to the magistrate judge, they should be excluded from the probable cause analysis. *See United States v. Jacobsen*, 466 U.S. 109, 112 n.2 (1984); *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992) (noting that the good-faith exception does not apply "where the warrant is based on *an affidavit* so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (emphasis added)). The only statements referencing the cell phone were part of a template and did not even specify the offense of which the cell phone was alleged to contain evidence. Because these statements were the only support provided to the magistrate judge for

the warrant, for the warrant to be upheld, these statements alone must provide sufficient indicia of probable cause to render reliance on the warrant reasonable.

When evaluating whether a warrant was issued on the basis of a "bare bones" affidavit lacking sufficient indicia of probable cause, the Fifth Circuit has emphasized the need for a nexus between the specific crime for which evidence is sought and the place to be searched. Some cases suggest that even generalizations about specific types of crimes cannot establish the required nexus without more. *See e.g., United States v. Broussard*, 80 F.3d 1025, 1034-35 (5th Cir. 1996) ("The so-called 'boilerplate' assertions that [defendant] complains of, which are based on the affiant's extensive experience and training and involve generalizations about the types of evidence that may be found in *drug dealers'* residences, do not undermine the reasonableness of reliance on the warrant. *We do not mean to suggest that these types of generalizations, without more, are sufficient to render the officers' reliance objectively reasonable*." (internal citations omitted and emphasis added)); *see also United States v. Fields*, 72 F.3d 1200, 1214 (5th Cir. 1996) (finding probable cause for a search warrant in a drug distribution case where the affidavit stated that "in the affiant's experience in law enforcement, criminals keep evidence of crime in their home," *and* that defendant "would stay at the home, and that members of the organization called the home on several occasions" (emphasis added)); *United States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993) (listing cases in which affidavits were found sufficient where they stated that individuals that committed *a certain crime* "routinely concealed evidence of the crime in their homes," *and* where evidence was not found at the scene of the crime); *In re Search of a White Apple iPhone*, 2012 WL 2945996 (S.D. Tex. Apr. 11, 2012) ("More important, [Affiant] fails to discuss why it is reasonable to believe that a search of the cell phone will provide any evidence of *a SORNA violation*. Without such a nexus, there is no probable cause for the search

of the targeted phone." (emphasis added)); *United States v. Kleinkauf*, 2010 WL 3781889, at \*10 (E.D. Tex. Aug. 6, 2010) (upholding search warrant despite boilerplate language where the generalizations were about "people who *produce, trade, distribute, or possess child pornography*" (emphasis added)). Nowhere do this affidavit's generalizations about cell phone use even name the offense being investigated—much less provide any kind of connection between that specific offense and the use of a cell phone.

The Fifth Circuit has given further indication about what it considers a "bare bones" affidavit. The Fifth Circuit refused to apply the good-faith exception in an unpublished case, *United States v. Brown*, on the basis that the affidavit on which the search warrant was issued was "bare bones." 567 F. App'x 272, 282–83 (5th Cir. 2014) (unpublished). The affidavit in *Brown* failed either directly or inferentially to link defendant's house, which was the subject of the search warrant, to the drug-trafficking investigation. The court noted that the affiant "did not reference the residence until the concluding paragraph of the affidavit, at which point he attested only that: 'It is believed that additional narcotics may still be located in the vehicle. . . . It is also believed that additional narcotics and paraphernalia are located at Brown's residence.'" *Id*. The court found the affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 283. The good-faith exception thus did not apply, and the court proceeded to the probable cause analysis, finding that there was no substantial basis for the magistrate judge's finding of probable cause. *Id.* at 283-84.

[Affiant] provided no specific facts that would allow the magistrate to conclude that there was a fair probability that drugs would be found in Brown's residence. The affidavit contained no facts regarding the residence itself. Rather, in the affidavit, Lopez made

only a bare-bones assertion that it was believed that drugs would be found in the residence.

*Id.*

Although *Brown* dealt with the search of a home, not a cell phone, this Court concludes that the protections given to a cell phone must be at least equal to, if not greater than, the protections set out for houses. In *Riley v. California*, the Supreme Court noted that the privacy interest in a cell phone may often be greater than that in a home.

> In 1926, Learned Hand observed (in an opinion later quoted in *Chimel*) that it is "a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." *United States v. Kirschenblatt,* 16 F.2d 202, 203 (2d Cir. 1926). If his pockets contain a cell phone, however, that is no longer true. Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

573 U.S. 373, 396–97 (2014). Because the Fourth Amendment protections granted to a cell phone should be at least equal to those granted to a house, the Court finds *Brown* an appropriate comparator to the instant case.

Mr. Oglesby offers the Court an additional comparator, albeit one outside the Fifth Circuit. In *United States v. Ramirez*, a Western District of Kentucky court required that the Government make more specific allegations connecting the defendant, the cell phone searched,

and the crime charged, instead of relying on generalizations that cell phones tend to contain evidence of crimes. 180 F. Supp. 3d 491 (W.D. Ky. Apr. 12, 2016). The court noted that "[p]ossessing a cell phone during one's arrest for a drug-related conspiracy is insufficient by itself to establish a nexus between the cell phone and any alleged drug activity." *Id.* at 495. The court analyzed an affidavit very similar to the one currently before the Court.

> Detective Petter's statement regarding her training and experience lacks any specific reference to the crime of drug trafficking. It generalizes that 'an individual' may have information on his or her phone that connects him or her to a crime, co-defendants or victims, rather than specifically connecting Ramirez, the crime with which he was charged, or any known information about communications made using this particular phone.

*Id.* The court proceeded to find that the generalizations in the affidavit were insufficient even to trigger the good-faith exception. *Id.* at 496.

Here, the affidavit certainly contains sufficient evidence establishing probable cause to arrest Mr. Oglesby for burglary of a vehicle. But an arrest warrant does not entitle police to search a suspect's cell phone. Arrest warrants require probable cause to believe that the defendant committed the crime charged. Search warrants require something else entirely—"[f]acts in the affidavit must establish a nexus between the [thing] searched and the evidence sought." *Payne*, 341 F.3d at 400; *see also United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) ("[T]he fact that there is probable cause to believe a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime."). If the Supreme Court's decision in *Riley* is to mean anything, courts cannot allow post-arrest search warrants to become arrest warrants by another name.

Like in *Ramirez* and *Brown*, this affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Webster*, 960 F.2d at 1307 n.4. At oral argument, Affiant himself admitted that if the investigation had been into only one vehicle burglary, he would not have requested a search warrant for the phone. But while Affiant may have been subjectively motivated by the knowledge of a wider investigation, he failed to include that information in the affidavit or raise it with the magistrate judge. Based on the information before the magistrate judge, he did exactly what he said he would not—requested a search warrant for a cell phone for the investigation of a single vehicle burglary.

Further, to establish a nexus between the burglary and the phone, Affiant stated only that, as all criminals are wont to leave evidence of their crimes on their cell phones, so too would this cell phone contain evidence of this alleged criminal's burglary of a vehicle. This statement is not even a generalization about a specific crime, but about crime and criminals as a whole. *See Broussard*, 80 F.3d at 1034-35. Indeed, it is true of modern life more broadly; a person's cell phone contains evidence of almost any activity in which they participate. *Riley*, 573 U.S. at 396. If these statements are held sufficient, every accusation of criminal activity would automatically authorize a search of the suspect's cell phone, transforming every arrest warrant into a search warrant and directly contravening the Supreme Court's decision in *Riley*. The Court finds this case analogous to *Brown* and *Ramirez* and holds that the good-faith exception does not apply.

B.  Whether the Magistrate Judge Had No Substantial Basis for Finding Probable Cause

The magistrate judge had no substantial basis for finding probable cause. *United States v. Brown,* 941 F.2d 1300, 1302 (5th Cir. 1991). In this case, the affidavit was required to establish a nexus between Mr. Oglesby's cell phone and evidence of the vehicle burglary. The fact that a phone was present at the crime scene, plus Affiant's generalizations about phones often

containing evidence of "crimes," fails to establish that nexus. The search of Mr. Oglesby's cell phone thus violated the Fourth Amendment's probable cause requirement, and evidence collected during that search must be suppressed.

## IV.    PARTICULARITY

Mr. Oglesby argues additionally that the warrant was fatally overbroad because it authorized a search of virtually every category of data that a cell phone could contain, without limiting the search by date or data that could contain the evidence sought. (Doc. No. 21 at 7.) The Government alleges that the warrant satisfies the particularity requirement, because it particularly identifies the phone to be searched and does not explicitly authorize searches of irrelevant files, like banking applications. (Doc. No. 23 at 4.)

Mr. Oglesby urges the Court to adopt the approach of *United States v. Winn*, in which a Southern District of Illinois court considered a similar question. 79 F. Supp. 3d 904, 919 (S.D. Ill. Feb. 9, 2015). The search warrant at issue in *Winn* authorized the seizure of "all records" on the defendant's cell phone.

> The warrant in this case particularly described the place of the search: the white Samsung Galaxy III cell phone. With regard to the objects of the search, however, the warrant was facially overbroad, exceeded the probable cause to support it, and was not as particular as the circumstances would allow.

> The warrant authorized the seizure of "any or all files" contained on the cell phone and its memory card that "constitute[d] evidence of the offense of [Public Indecency 720 ILCS 5/11–30]," including, but not limited to, the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones,

audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files, and any delated data (Docs. 22–2, 22–3).

The major, overriding problem with the description of the object of the search—"any or all files"—is that the police did not have probable cause to believe that *everything* on the phone was evidence of the crime of public indecency. The description was a template used by the St. Clair County State's Attorney's Office for all cell phone searches. Templates are, of course, fine to use as a starting point. But they must be tailored to the facts of each case. This particular template authorized the seizure of virtually every piece of data that could conceivably be found on the phone. The Supreme Court put the scope of such a wholesale seizure in perspective by explaining that it "would typically expose the government to far *more* than the most exhaustive search of a house." *Riley v. California,* ⸺ U.S. ⸺, 134 S.Ct. 2473, 2491, 189 L.Ed.2d 430 (2014) (emphasis in original). Obviously, the police will not have probable cause to search through and seize such an expansive array of data every time they search a cell phone. And, in the case of a misdemeanor crime, it is difficult to fathom why the police would ever need, or have probable cause, to do so. That certainly holds true in the instant case.

. . . .

The bottom line is that if Detective Lambert wanted to seize every type of data from the cell phone, then it was incumbent upon him to explain in the complaint how and why each type of data was connected to Winn's criminal activity, and he did not do so. Consequently, the warrant was overbroad, because it allowed the police to search for and

seize broad swaths of data without probable cause to believe it constituted evidence of public indecency.

*Id.* at 919–21. The Court agrees with the *Winn* court's interpretation of the Fourth Amendment, especially in light of the Supreme Court's acknowledgment in *Riley* that the search of a cell phone is potentially even more invasive than a search of a home. 573 U.S. 373, 396–97 (2014).

Further, the *Winn* court's analysis comports with Fifth Circuit precedent regarding "all records" warrants. The Fifth Circuit closely scrutinizes this type of warrant. In *United States v. Humphrey*, the Fifth Circuit described as an "all records" warrant one that authorized the seizure of:

1. Books, records, receipts, notes, ledgers and other documents relating to financial transactions and relationships with financial institutions.

2. Ledger paper, column paper, check registers, checks, U.S. currency, deposit slips, receipts, bank statements, cashier's checks, association checks, check order forms, new account information forms, wire transfers and receipts, signature cards, correspondence, and all other documents relating to banking, banking transactions, and transactions at savings and loan institutions, and in particular all documents relating to the purchasing, cashing, transferring and depositing of cashier's checks.

3. Credit cards, debit cards, and all statements, receipts, applications, letters, notices, and other documents which relate to the use of credit cards or debit cards.

4. Computer storage devices containing records, documents, and other information described above in paragraphs 1 thru 3, and related equipment and materials for adequately retrieving and reviewing the information, including central processing units,

printers, monitors, floppy discs and instruction manuals which could be used to store information regarding customer files and banking information.

104 F.3d 65, 69 n.1 (5th Cir. 1997).

This "all records" warrant contains *greater* specificity than the warrant in the instant case. The warrant in *Humphrey* limits itself to items that relate to broad categories of financial information. In contrast, the warrant at issue here lists just about every type of data that could possibly be contained on a phone, and explicitly disclaims the suggestion that the search must be limited to the categories of data in the enumerated list. (Doc. No. 21-2 at 1 (authorizing seizure of "any and all evidence that may be found [on the phone] including, *but not limited to*" the enumerated types of data). The entire purpose of listing with particularity the items that investigators have authority to search and seize is *to limit the items that investigators have authority to search and seize.* The Court finds that this warrant is an "all records" warrant, which must be closely scrutinized under the Fourth Amendment. *Humphrey*, 104 F.3d at 69 & n.2.

The Fifth Circuit upheld the warrant in *Humphrey* "in light of the pervasive nature of the fraud, the considerable overlap of the Humphreys' business and personal lives, and the limitation of the warrant to records pertaining to financial transactions." *Id.* at 69. In doing so, the court quoted with approval the First Circuit's requirement that absent "extraordinary proof" demonstrating "that an individual's entire life is consumed by fraud and that all records found in the home were subject to seizure," broad categories of items to be seized in an "all records" warrant "must be sufficiently linked to the alleged criminal activity so as to distinguish them from innocent personal materials." *Id.* (quoting *United States v. Falon*, 959 F.2d 1143, 1148 (1st Cir. 1992)).

The warrant in this case cannot meet this standard. Nothing about vehicle burglary is "sufficiently linked" to the various categories of data described in the warrant. Certainly, no connection is explicated in the affidavit or the warrant. The conduct described in the affidavit does not inherently implicate the use of a cell phone. The Court finds it unlikely that anyone would have to Google "how to break into a car" to come up with the idea to smash a rear window. Without the post-search testimony that Mr. Oglesby had a co-conspirator with him when he was arrested, there is no indication that he would need to communicate with anyone to coordinate the burglary. Neither did the affidavit suggest that individuals stealing firearms often sell those firearms by contacting fences through their cell phones or social media accounts.

The search warrant in this case entirely failed to engage with the court's duty, imposed by the Fourth Amendment, to safeguard the privacy of individuals against the investigative arm of the state. It does not limit the search to the time period in which the offense was allegedly committed. It does not limit the search to any particular files or data that could contain relevant evidence. It does not even limit the search to data *capable* of being stored on the phone, authorizing police to search any "CD-ROM's, CD's, DVD's, [and] thumb drives" they happen to find inside the cell phone. (Doc. No. 21-2 at 1.)

The Court finds that "the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." Thus, the good-faith exception cannot apply. For the same reasons, the search warrant violates the particularity requirement of the Fourth Amendment. As a result, evidence obtained through the illegal search of Mr. Oglesby's cell phone must be suppressed.

## V.     WHETHER INVALID PORTIONS OF THE WARRANT CAN BE SEVERED

At oral argument, the Government cited *United States v. Gaytan*, 74 F.3d 545 (5th Cir. 1996), for the proposition that, if the Court found portions of the warrant invalid, it should only suppress evidence found pursuant to those portions of the warrant. The constitutional defects in this warrant are more accurately attributed to the what that the warrant *failed* to include. No portion of the warrant is supported by probable cause. No allegations support the search of any of the types of data identified in the search warrant, because the affidavit was devoid of any nexus between the phone and the specific offense being investigated. Severance cannot create probable cause or particularity where there is none, and thus *Gaytan* cannot save any portion of this warrant. *See United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013) ("[S]everance is not an available remedy for an overbroad warrant where no part of the warrant is sufficiently particularized, where no portion of the warrant can be meaningfully severed, or where the sufficiently particularized portions make up only an insignificant or tangential part of the warrant.").

## VI.     WHICH EVIDENCE MUST BE SUPPRESSED

The exclusionary rule requires suppression of all evidence seized during the cell phone search. *Murray v. United States*, 487 U.S. 533, 536-37 (1988). This includes evidence acquired "as an indirect result of the unlawful search." *Id.* Mr. Oglesby identifies the relevant evidence as including "the photos, videos, and communications" found on the phone, and "all of the firearms, ammunition, statements, and additional evidence obtained as the result of the officers' use and exploitation" of the unlawful search. (Doc. No. 21 at 15.) The Government declined to make any argument that certain evidence should not be suppressed on the grounds of, for example, attenuation or inevitable discovery. The Court thus adopts Mr. Oglesby's description of the

evidence to be suppressed. Specifically, this includes the evidence obtained as a result of the investigation into (1) serial numbers on the firearms seen in photos obtained from the phone and (2) Mr. Oglesby's activities in Primary Arms gun store, which were discovered by tapping the phone's GPS data. (Doc. No. 21-2.)

## VII.    CONCLUSION

The Court **GRANTS** Mr. Oglesby's Motion to Suppress. (Doc. No. 21.) The search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992). The good-faith exception to the exclusionary rule does not apply. Because there was no substantial basis for the magistrate judge's probable cause determination, the search warrant violated the Fourth Amendment. Evidence obtained pursuant to the warrant, as described above, must be suppressed.

Additionally, the warrant was "so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." *Id*. The good-faith exception to the exclusionary rule does not apply. The warrant was fatally overbroad in violation of the Fourth Amendment's particularity requirement.  Evidence obtained pursuant to the warrant, as described above, must be suppressed.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 26th of April, 2019.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE